UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:16-CR-092 |
| ) | |
| ASHDON J. SCHEXNAYDER ) | |

## MEMORANDUM AND ORDER

This criminal case is before the Court on the defendant's: renewed *pro se* 18 U.S.C. § 3582(c)(1)(A)(i) motion for compassionate release [doc. 41]; *pro se* motion for appointment of counsel [doc. 43]; *pro se* motion to modify Presentence Investigation Report ("PSR") [doc. 45]; counseled supplemental motion for compassionate release [doc. 52]; and filings, both *pro se* and counseled, in support of the pending motions [docs. 42, 44, 47, 56].[1] The United States has responded in opposition [docs. 57, 58] and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the defendant's motions will be denied.

## I. BACKGROUND

In 2017, the Honorable Pamela L. Reeves sentenced the defendant to a 120-month term of imprisonment for failing to register as a sex offender. [Doc. 29]. The defendant is presently serving that sentence at USP Tucson with a projected release date of September 10, 2024. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 25,

---

[1] A prior *pro se* motion for sentence reduction [doc. 34] was denied without prejudice in 2021 by the Honorable Thomas A. Varlan for failure to exhaust administrative remedies. [Doc. 40].

2022). The defendant now moves for compassionate release in light of the COVID-19 pandemic, asthma, rehabilitative efforts, and self-described status as "a transgender girl."[2]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his or her behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

---

[2] Arguments are also presented relating to the defendant's conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). It is unclear whether this defendant has fully exhausted administrative remedies on that claim, and incarceration is not in this judicial district. This issue will not be discussed further herein.

2

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[3]

In *Jones*, the Sixth Circuit observed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114. Subsequently, in *Elias*, the appellate court "clarified" that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." 984 F.3d at 519.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days passed between the warden's receipt of that request and the filing of the defendant's *counseled* compassionate release motion. [Doc. 52, Ex. 1]. However, the United States disputes whether the request to the BOP addressed every issue raised in the instant motions. *See United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) ("[A]n inmate is required to present the same or similar ground for compassionate release in a

---

[3] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

request to the Bureau as in a motion to the court."). The Court need not resolve this dispute because, as conceded by the United States, the Court is free to deny the defendant's motion on its merits even if the mandatory exhaustion requirement has not been satisfied. *See Elias*, 984 F.3d at 519; *Williams*, 987 F.3d at 702.

**B. Merits**

The defendant's compassionate release from prison would be inconsistent with the 18 U.S.C. § 3553(a) factors. For that reason alone, the pending compassionate release motions will be denied. *See Elias*, 984 F.3d at 519.

Pursuant to section 3553(a),

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

. . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The defendant's misconduct in this case was extremely serious, far more so than the typical failure to register cases that this Court sees. The defendant was required to register as a sex offender due to a 2011 Illinois conviction for Criminal Sexual Abuse in which "the defendant fondled the breasts of a girl between the age of 13-17" while less than five years older than the victim. [Doc. 21, ¶¶ 12, 36]. The defendant received a three-month prison

5

Case 3:16-cr-00092-RLJ-CCS   Document 59   Filed 07/27/22   Page 5 of 10   PageID #: 616

sentence in that case to be followed by two years' probation, the terms of which were subsequently violated "in several ways including failing to register as a sex offender." [*Id.*]. In 2016, the defendant moved to Tennessee "to avoid prosecution in Illinois" for another offense. [*Id.*, ¶ 13]. The defendant did not register as a sex offender upon moving to Tennessee in order to keep that status a secret. [*Id.*].

When apprehended in this case, the defendant was staying in a motel room with a 14-year-old female runaway. [*Id.*, ¶ 14]. The girl told officers that she had previously "dated" the defendant in Illinois. [*Id.*, ¶ 15]. According to the girl, the defendant had encouraged her to come to Tennessee and "she and the defendant had consensual sexual intercourse" upon her arrival in this state. [*Id.*]. "The defendant and the minor female both admitted to police that they had sexual intercourse in the hotel room. Further, the minor female told police that the defendant gave her advice and instruction on how to obtain transportation from Illinois to Tennessee." [*Id.*, ¶ 17].

The defendant's criminal history began with a weapons conviction at age 12 and a burglary conviction at age 15. [*Id.*, ¶¶ 34-35]. There are additional adult convictions for theft, vandalism, and failure to register as a sex offender. [*Id.*, ¶¶ 37, 39-41]. The defendant has twice been unsuccessfully discharged from probation, and the instant offense was committed while the defendant was under a criminal justice sentence. [*Id.*, ¶¶ 38-39, 43]. The defendant was 23 years old when sentenced in the instant case and there were already 11 countable criminal history points. [*Id.*, ¶ 44]. The defendant reports a sporadic history of substance abuse dating back to age 12. [*Id.*, ¶ 58].

Turning to the issue of rehabilitation, the Court appreciates that the defendant has now earned a GED, and there appear to have been no disciplinary sanctions during the current term of incarceration. [Doc. 57, Ex. 1]. The defendant has completed an additional 56 hours of programming such as beading, intermediate beading, and jump rope for beginners. [Doc. 57, Ex. 3].

Conversely, the defendant has failed to take advantage of programming far more beneficial and necessary than beading and jump rope. Most strikingly, the defendant has declined to participate in BOP residential sex offender treatment. [Doc. 57, Ex. 1].

> The Sex Offender Treatment Program - Residential (SOTP-R) is a high intensity program designed for high risk sexual offenders. The program consists of cognitive-behaviorally based psychotherapy groups, totaling 10-12 hours per week, on a residential treatment unit employing a modified therapeutic community model.
>
> …
>
> The SOTP-R is designed to target dynamic risk factors associated with re-offense in sex offenders, as demonstrated by empirical research. These factors include: sexual self-regulation deficits and sexual deviancy; criminal thinking and behavior patterns; intimacy skills deficits; and emotional self-regulation deficits. The program employs cognitive-behavioral techniques, with a primary emphasis on skills acquisition and practice. The modified therapeutic community model is employed to address pro-offending attitudes and values.

Directory of National Programs, Federal Bureau of Prisons, https://www.bop.gov/inmates/custody_and_care/docs/20170518_BOPNationalProgramCatalog.pdf (last visited July 25, 2022).

Additionally, the defendant either failed or withdrew from the BOP's Resolve Program. [Doc. 57, Ex. 1].

> The Resolve Program is a cognitive-behavioral program designed to address the trauma related mental health needs of inmates. Specifically, the program seeks to decrease the incidence of trauma related psychological disorders and improve inmates' level of functioning. In addition, the program aims to increase the effectiveness of other treatments, such as drug treatment and healthcare. The program uses a standardized treatment protocol consisting of three components: an initial psycho-educational workshop (Trauma in Life); a brief, skills based treatment group (Seeking Safety); and Dialectical Behavioral Therapy (DBT), Cognitive Processing Therapy (CPT), and/or a Skills Maintenance Group which are intensive, cognitive-behavioral treatment groups to address persistent psychological and interpersonal difficulties.

Directory of National Programs, Federal Bureau of Prisons, https://www.bop.gov/inmates/custody_and_care/docs/20170518_BOPNationalProgramCatalog.pdf (last visited July 25, 2022). The defendant remains categorized by the BOP as a high security inmate with high risk of recidivism. [Doc. 57, Ex. 1]. On the whole, the issue of rehabilitation does not weigh in the defendant's favor.

More than two years of the defendant's sentence remain unserved. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). The defendant's misconduct in this case was intentional and manipulative, and there is a history of noncompliance with probation and registration requirements. Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

## III. REMAINING MOTIONS

The defendant's *pro se* motion for appointment of counsel will be denied. The issue became moot when counsel subsequently appeared on the defendant's behalf.

The defendant's *pro se* motion to amend the PSR will also be denied. The PSR states that the defendant is male and white. [Doc. 21, p. 2]. The defendant objected to neither of those points at sentencing. [Doc. 23].

Now, however, the defendant states that "I strongly identify as a female, inside the P.S.I.R. the Probation Office mislabled [sic] me a Male sex without my authorization or any other factual evidence." [Doc. 45, p. 3]. The defendant further argues that "I identify as a Malagasy Ethnic Group (Nationality) and race as other. The probation office has mislabled [sic] me in the P.S.I.R. which is libel with no factual evidence of support but more on a PREJUDICE ASSUMPTION." [*Id.*, p. 4] (capitalization in original).

Once a district court imposes sentence, it lacks jurisdiction over challenges to a PSR's contents. *See, e.g., United States v. Sarden*, No. 2:16-CR-28, 2020 WL 2189802, at * 2 (E.D. Tenn. May 5, 2020). The defendant's untimely motion to amend the PSR will accordingly be denied.

9

## IV. CONCLUSION

As provided herein, the defendant's motions for compassionate release and for amendment of the PSR [docs. 41, 45, 52] are **DENIED**. The defendant's motion for appointment of counsel [doc. 43] is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge